# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVEN E. WARMAN,

    Petitioner,

v.	Civil Action No. 1:08cv217
	(Judge Keeley)

WAYNE PHILIPS, Warden

    Respondent.

## AMENDED REPORT AND RECOMMENDATION[1]

In this § 2241 habeas corpus action, *pro se* petitioner asserts that the Bureau of Prisons ("BOP") has wrongfully denied him admittance into the Bureau's Residential Drug Abuse Treatment Program ("RDAP") and one-year early release. Upon a preliminary review of the file on January 7, 2009, the undersigned found that summary dismissal was not warranted at that time, and the respondent was directed to file a response to the petition. On February 6, 2009, the respondent filed his response together with a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. On February 27, 2009, the petitioner filed a response. This matter is now before the undersigned for a report and recommendation pursuant to LR PL P § 83.01, et seq.

## I. Factual and Procedural History

On August 31, 2005, the petitioner was sentenced to a 97 month term of imprisonment for "Conspiracy to Possess with Intent to Distribute Cocaine", in violation of 21 U.S.C. § 841 (a)(1),

---

[1] The sole purpose of this Amended Report and Recommendation is to include a specific recommendation that the respondent's Motion to Dismiss be granted and to modify footnote 8 (footnote 7 in the original Report and Recommendation) which contained information not related to the petitioner's case. In all other respects, this Report and Recommendation is identical to that which was entered on April 9, 2009.

(b)(1)(B), and 21 U.S.C. § 846. (Doc. 19-2, pp. 8-9). The petitioner was placed in the custody of the BOP on October 3, 2005, and was originally designated to FCI Milan which is located in Michigan. Since his initial placement at FCI Milan, the petitioner has been transferred to FCI Ashland, then USP Big Sandy, and finally to FCI Morgantown, where he currently remains.(Doc. 19-2, p. 14). At each facility, psychology staff conducted an Intake Screening. During each screening, the petitioner reported a history of substance abuse but only once reported an interest in participating in programs/treatment.[2] (Doc. 19-2, pp. 2-3). Although the petitioner expressed no interest in participating in treatment at his initial screening at FCI Morgantown, on September 10, 2007, ten days after his intake screening, the petitioner submitted an "Inmate Request to Staff" to Devonne McCall, the Drug Abuse Treatment Specialist On October 25, 2007, the petitioner was provided with a RDAP Eligibility Interview. During the course of the interview, the petitioner stated that he had used alcohol, marijuana, hallucinogens, inhalants, barbiturates, opiates, amphetamines, and nicotine. On December 12, 2007, the petitioner received a Residential Drug Abuse Program Notice to Inmate from Dr. Guriel, RDAP Coordinator. Dr. Guriel's notification to the petitioner stated "you have been deemed unqualified for the RDAP because you had no verification in your presentence investigation of drug abuse or alcohol abuse history within a year of your arrest or indictment...Participation in Non-Residential Group is recommended if you feel that you need treatment." (Doc. 19-2, pp. 4-5). On April 1, 2008, the petitioner requested to participate in the BOP Drug Education Course and began participating on May 5, 2008. On May 14, 2008, the petitioner was expelled from the course for failure to attend class. He was advised that he could re-

---

[2]Only at USP Big Sandy did the petitioner express an interest in drug abuse treatment. (Doc. 19-2, pp. 2-3).

apply to the class at a later date if he wanted. (Doc. 19-2, p. 5).

## II. Contentions of the Parties

### A. The Petitioner

In the petition, the petitioner alleges that the BOP arbitrarily and capriciously abused its discretion in deeming him "unqualified" for the RDAP. In addition, the petitioner argues that exhaustion of administrative remedies would be futile, and therefore, the requirement should be waived.

### B. The Respondent

In the response, the respondent asserts that under the Prison Litigation Reform Act ("PLRA"), the petitioner failed to exhaust his administrative remedies prior to filing suit. In the alternative, the respondent argues that 18 U.S.C. § 3625 precludes this court from reviewing the BOP's substantive determination regarding the petitioner's eligibility for RDAP. Accordingly, the respondent contends that the petition should be denied and dismissed with prejudice.

### C. The Petitioner's Reply

In his reply, the petitioner appears to argue that he should be excused from exhaustion of his administrative remedies because the BOP has "punished him via involuntary transfers, 'deesel [sic] therapy' and segregation in several BOP 'holes' with confiscation of legal documents" when he has attempted exhaustion of administrative remedies in the past. (Doc. 21, p. 2). In addition, the petitioner also appears to allege that he has been denied equal protection of the law through his exclusion from RDAP.

## III. Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) amended 18

U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations. 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). As an incentive for the successful completion of the residential treatment program, the BOP may, in its discretion, reduce an inmate's sentence by up to one year. 18 U.S. C. § 3621(e)(2); see also Lopez v. Davis, 531 U.S. 230 (2001).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement. According to the regulations, in order to be considered eligible for the residential drug abuse program, the inmate must have a verifiable documented drug abuse problem, must have no serious mental impairment which would substantially interfere with or preclude full participation in the program, must sign an agreement acknowledging his program responsibility, must ordinarily be within thirty-six months of release and the security level of the residential program institution must be appropriate for the inmate. 28 C.F.R. § 550.56(a). Participation in the program is voluntary and decisions on placement are made by the drug abuse treatment coordinator. 28 C.F.R. § 550.56(b).

The application of § 550.56 is set forth in Program Statement ("PS") 5330.10, which states in relevant part:

> **Eligibility. An inmate must meet all the following criteria to be eligible for the residential drug abuse treatment program.**
>
> **(1) The inmate must have a verifiable documented drug abuse problem.**

4

> Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the <u>Residential Drug Abuse Program Eligibility Interview</u> followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The information must meet the diagnostic criteria for substance abuse or dependence indicated in the <u>Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM-IV)</u>. This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
> Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate <u>used</u> the <u>same substance</u>, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

PS 53310, Ch. 5, § 5.4.1, page 3-4 (emphasis in original).

The DSM-IV, a manual published by the American Psychiatric Association, "defines 'substance dependence' and 'substance abuse' as 'a maladaptive pattern of substance abuse, leading to clinically significant impairment or distress . . . in [a] twelve month period. The DSM-IV also lists several symptoms relevant to diagnosing each of these conditions." See <u>Goren v. Apker</u>, 2006 WL 1062904 (S.D.N.Y. April 20, 2006) (citations omitted)

### IV. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. <u>Walker v. True</u>, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984); <u>Conley v.</u>

Gibson, 355 U.S. 41, 4506 (1957).

**B. <u>Summary Judgment</u>**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 1986).

## V.  Analysis

**A. Exhaustion**

In the response to the petition, the respondent argues that under the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The respondent then cites several cases in which the Supreme Court has held that under the PLRA, Congress has mandated the proper completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief prior to filing suit in federal court. See Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 531 U.S. 956 (2001). In addition, the respondent notes that courts have applied these same principles to petitions for writ of habeas corpus. See Pelissero v,. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994); Wright v. Anderson, 2008 WL 583442 (S.D. W.Va. February 29, 2008).

While the undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions, the respondent's argument misses the mark. The requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)).[3]

---

[3] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue. at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

Here, it is not disputed that petitioner failed to exhaust his administrative remedies prior to filing suit in this Court. However, this case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

**B. 18 U.S.C. § 3625**

Sections 3621(b) and (e) clearly state that determining which prisoners are eligible for substance abuse treatment is within the sole discretion of the BOP, as is the decision to reduce a prisoner's sentence by up to one-year upon the successful completion of such programs. Moreover, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded these subsections from judicial

---

separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

review under the Administrative Procedures Act ("APA"). See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."[4]

Accordingly, any substantive decision by the BOP to grant or deny the petitioner's admittance into the RDAP, or regarding his eligibility to receive a one-year sentence reduction, is not reviewable by this Court. However, where judicial review under the APA is specifically excluded by statute, the United States Supreme Court has found that two questions are still appropriate for the Court's review. Davis v. Beeler, 966 F.Supp. at 489. The first question is whether any cognizable constitutional claim has been presented. See Webster v. Doe, 486 U.S. 592 (1988). The second question is whether an agency's interpretation of a statute is contrary to well-settled law. See Neal v. United States, 516 U.S. 284 (1996).

**C. Petitioner's Constitutional Claims**

1. Due Process

In the his motion for a preliminary injunction, the petitioner asserts that he has "suffered serious injuries in violation of his Constitutional right to 'petition the government for redress of grievances...due process of law,' i.e., early release in the execution of his sentence, inter alia, as well as physical and mental injuries suffered." (Doc. 4, p.2). This claim is without merit as it relates to his exclusion from RDAP.[5]

---

[4] Pursuant to 5 U.S.C. § § 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review.

[5] On the same date he filed his 2241 petition, the petitioner filed a Motion for Preliminary Injunction. As is often the case with *pro se* pleadings, the document is difficult to interpret but

It is well established that in order to demonstrate a due process violation, a petitioner must show that he was deprived of a liberty or property interest protected under the Fifth Amendment. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). However, the Supreme Court has made it quite clear that a prisoner has no constitutional or inherent right in being released before the completion of a valid sentence. Id.; see also Sandin v. Conner, 515 U.S. 472, 484 (1995). In fact, directly on point with this case, several courts, including this one, have found that there is no protected liberty interest in discretionary early release under 18 U.S.C. § 3621(e) for completion of the RDAP. See Cook v. Wiley, 208 F.3d 1314, 1322-23 (11th Cir. 2000); Venegas v. Henman, 126 F.3d 760, 765 (5th Cir. 1997); Jacks v. Crabtree, 114 F.3d 983, 986 n. 4 (9th Cir. 1997); Fonner v. Thompson, 955 F.Supp. 638, 642 (N.D.W.Va. 1997).

2. Equal Protection

In the response to the respondent's motion to dismiss, the petitioner appears to assert that the BOP's decision that he was not eligible for the RDAP and subsequent one-year sentence reduction is a violation of his equal protection rights. This claim is also without merit.

The equal protection clause provides that no person shall be denied equal protection under the laws. Therefore, to be successful on an equal protection claim, the petitioner must demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, petitioner fails to assert that any similarly situated persons were treated differently

---

appears to raise primarily issues regarding the conditions of his confinement and is not related to his RDAP claims. However, out of an abundance of caution, the undersigned has "lifted" the petitioner's reference to due process and considered it as a claim regarding the RDAP.

from him, or that the alleged unequal treatment was the result of intentional or purposeful discrimination. In fact, the Declaration of Dr. Baker confirms that per policy, any prisoner who wishes to participate in the RDAP must show verification of substance abuse within one year prior to his arrest or indictment. (Doc 19-2, p.5).[6] Because the petitioner has failed to show that any other inmate lacking adequate documentation of substance abuse has been admitted to the program and granted a one-year sentence reduction, the petitioner has failed to show that his rights under the equal protection clause have been violated.

D. **Agency's Interpretation of the Statute**

The standards set forth in Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc., 674 U.S. 837 (1984), govern a Court's review of an agency's construction of a statute. Specifically,

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. In the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron at 842-43 (footnotes omitted).

In this case, the question is how the phrase "substance abuse problem" is defined. However, Congress has not spoken to this precise question. Instead, Congress has left it to the discretion of the BOP to determine which prisoners have a substance abuse problem and are therefore eligible for the RDAP. In defining what constitutes a substance abuse problem, the BOP has reasonably turned

---

[6] See also Laws v. Barron, 348 F.Supp.2d 795, 806 (E.D.Ky. 2004) (the BOP has consistently imposed these same requirements on all inmates throughout the BOP prison system).

11

to a diagnostic manual published by mental health professionals who deal with this issue on a regular basis. The DSM-IV diagnoses a substance abuse problem based upon the existence of certain symptoms during a twelve-month period. (Doc. 19-2, p. 6). Because of the high demand for the RDAP program, and the potential for abuse due to the one-year sentence reduction, the BOP has found that a prisoner's substance abuse must be verified. See Laws v. Barron, 348 F.Supp.2d at 800 ( "Droves of inmates who were convicted of non violent . . . offenses have applied to be accepted into qualifying programs such as the RDAP so as to be eligible for early release.") Therefore, it is reasonable for the BOP to review a prisoner's central file, including his PSI and other official court documents, for verification of self-reported substance abuse problems.

Further, the BOP has reasonably determined that the documented substance abuse problem must occur within the twelve months preceding arrest or incarceration because those individuals are most in need of the program and will receive the maximum benefit. See Declaration of Edward Baker, PhD., at ¶ 16 (Doc. 19-2, p. 6) (inmates who do not have a verified substance abuse problem within one-year or arrest or incarceration are considered to be in remission making RDAP unnecessary). Thus, the undersigned finds that the BOP's interpretation of "substance abuse problem," and its related criteria, is a reasonable interpretation of the 18 U.S.C. § 3621,[7] and the

---

[7] Other Courts have made similar findings. See Shew v. FCI Beckley, 2006 WL 3456691 * 4 (S.D.W.Va. Sept. 19, 2006) (finding that the BOP's interpretation of § 3621(e) "neither violates any statutory or constitutional provision, nor is in conflict with any rule, regulation or program statement"); Montilla v. Nash, 2006 WL 1806414 (D.N.J. June 28, 2006) (the challenged policy and practice of the BOP is a reasonable interpretation of the § 3621(e)); Quintana v. Bauknecht, 2006 WL 1174353 (N.D.Fla. May 2, 2006) (finding that the BOP's practice of requiring written document of a verifiable drug abuse problem is not an impermissible or unreasonable interpretation of § 3621(e)); Goren v. Apker, supra (finding that the BOP's interpretation of § 3621(e) is a permissible exercise of the broad discretion Congress granted to the BOP to administer the RDAP); Laws v. Barron, supra (the BOP's interpretation of § 3621(e) does not contravene well-settled caselaw), *but compare*, Kuna v. Daniels, 234 F.Supp.2d 1168 (D.Or. 2002) (finding that PS 5330.10 does not require verification in an inmate's central file of abuse or dependence, only the mere use of drugs or alcohol, therefore, the BOP acted arbitrarily in imposing requirements beyond those in its program statement); Mitchell v. Andrews, 235 F.Supp.2d 1085

decision of Dr. Baker finding Petitioner ineligible for the RDAP and subsequent one-year sentence reduction does not violate the terms of the statute authorizing the RDAP.[8]

## V. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc. 18) be **GRANTED**, and the petitioner's § 2241 petition be **DENIED and DISMISSED WITH PREJUDICE**. In light of this finding, the undersigned also recommends that the Petitioner's Motion for Preliminary Injunction (Doc. 4), Motion to Supplement Motion for Preliminary Injunction (Doc. 16), and Motion to Consider or Alternatively Reconsider Motion for Preliminary Injunction (Doc. 17) each be **DENIED**.

Within ten (10) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

---

(E.D.Cal. 2001) (finding that it is an unreasonable exercise of the BOP's discretion under the statute to require verification of a substance abuse problem in the twelve months preceding arrest or incarceration).

[8]The petitioner has not taken advantage of the BOP's Non-Residential Drug Treatment Program for which he has been found eligible. If the petitioner's intention was truly to receive help for a legitimate substance abuse problem, and not just to receive the benefit of the one-year sentence reduction, it seems that the petitioner would have taken advantage of any opportunity to receive help. It is this particular kind of misuse that the BOP is attempting to prevent by requiring verification of substance abuse.

13

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the clerk shall provide a copy to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: April 14, 2009.

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE