IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVEN WARMAN,

      Petitioner,

v.                        CIVIL ACTION NO. 1:08CV217
                                (Judge Keeley)

WAYNE PHILIPS, Warden,

      Respondent.

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

On April 14, 2009, Magistrate Judge James E. Seibert issued a Report and Recommendation ("R&R"), recommending that the motion to dismiss of the respondent, Warden Wayne Philips ("Philips") be granted, that the pro se petition of Steven E. Warman ("Warman"), filed pursuant to 28 U.S.C. § 2241, be denied and dismissed with prejudice, and that Warman's remaining pending motions also be denied. On May 15, 2009, Warman moved for a continuance or, in the alternative, objected to the recommendations in the R&R. For the reasons that follow, the Court **DENIES** Warman's motion to continue, and, following a de novo review, **ADOPTS** the R&R in its entirety.

**WARMAN V. PHILIPS** 1:08CV217

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

## I. Procedural Background

On December 10, 2008, Warman, who is an inmate at the Federal Correctional Institution in Morgantown, West Virginia, filed a "Petition For A Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241," asserting that the Bureau of Prisons ("BOP") arbitrarily and capriciously abused its discretion in determining that he was "unqualified" for the residential drug and alcohol program ("RDAP"), and that the administrative exhaustion requirement typically applicable to such a claim should be waived as futile (dkt. no. 1). Specifically, Warman alleges that the BOP had used an earlier version of his PSR to determine his eligibility for RDAP, and not the PSR that had been amended at his sentencing hearing, which included information about his drug use. Together with his Petition, Warman also filed a motion to proceed in forma pauperis (dkt. no. 2), a motion for the release of records pursuant to the Freedom of Information Act, 5 U.S.C. § 522 et seq. ("FOIA")(dkt. no. 3), a motion for a preliminary injunction (dkt. no. 4), and a motion to appoint counsel (dkt. no. 5).[1]

---

[1] On January 20, 2009, Warman filed a motion to supplement his motion for a preliminary injunction (dkt. no. 16) and a motion to consider his motion for a preliminary injunction (dkt. no. 17).

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

The Court referred this matter to United States Magistrate Judge James E. Seibert for initial screening and a report and recommendation in accordance with Local Rule of Prisoner Litigation 83.09. On December 17, 2008, Magistrate Judge Seibert granted Warman's motion to proceed in forma pauperis. On April 9, 2009, Magistrate Judge Seibert denied Warman's FOIA request, finding that, although it was unclear whether Warman had exhausted his administrative remedies, a FOIA request is not appropriate under a § 2241 petition.

**II.  Report and Recommendation**

On April 14, 2009, Magistrate Judge Seibert issued an amended[2] R&R recommending that the respondent's motion to dismiss or, in the alternative, for summary judgment (dkt. no. 18), be granted, and that Warman's § 2241 petition be denied and dismissed with prejudice. In his motion to dismiss, the respondent had argued that the petition should be dismissed for failure to exhaust administrative remedies Magistrate Judge Seibert, however,

---

[2]  The sole purpose of the amended R&R was to add to the R&R issued on April 9, 2009 a specific recommendation to grant the respondent's motion to dismiss and to modify a footnote not related to this case.

**WARMAN V. PHILIPS**                                                     **1:08CV217**

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

recommended waiving the exhaustion requirement because, although habeas proceedings are subject to exhaustion, that requirement is judicially created and can be waived in certain circumstances, including whenever exhaustion would be futile. See LaRue v. Adams, 2006 WL 1674487, *5-*7 (S.D.W. Va. June 12, 2006). In this case, where the petition had been served and a response filed, making the matter ripe for review on the merits, Magistrate Judge Seibert concluded that it would be a waste of judicial time and resources not to waive the exhaustion requirement.[3]

Magistrate Judge Seibert also recommended granting the respondent's motion to dismiss and denying the petition because (1) determination of whether a prisoner is eligible for substance abuse treatment is within the sole discretion of the BOP, (2) Warman does not present a cognizable constitutional claim either under the Due Process or Equal Protection clauses of the Constitution, and (3) the BOP's interpretation of the statute giving it authority to determine eligibility for substance abuse treatment is not contrary to settled law.

---

[3] Warman does not object to the R&R's recommendation that the exhaustion requirement be waived. See Dkt. No. 23.

**WARMAN V. PHILIPS**                                                       **1:08CV217**

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

### III. Warman's Motion and Objections

In response to the R&R, Warman objects to the Magistrate Judge's prior order denying his FOIA request (dkt. no. 23), and moves the Court to order the government to turn over certain documents to him, including a copy of his amended PSR, and to continue this case for thirty (30) days to permit him to review the requested documents. In the alternative, Warman objects to the R&R's conclusion that he failed to support his equal protection claim by identifying any similarly situated persons who have been treated differently than he.

### IV. Respondent's Supplemental Response

On August 4, 2009, the Court ordered the respondent to file a brief addressing Warman's contention that the BOP used his old PSR, and not the amended version, in determining his eligibility for RDAP. On August 18, 2009, the respondent acknowledged in writing that the BOP had not used the most recently amended PSR in determining Warman's eligibility for RDAP. It attached a copy of

**WARMAN V. PHILIPS**                                                    **1:08CV217**

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

the PSR it used in its original determination, as well as Warman's most recent PSR for review by the Court <u>in</u> <u>camera</u>.[4]

In his response, the respondent noted that, after a review of the PSRs, the only changes made to the PSR dated July 1, 2005 (the "second amended PSR"), which the BOP used in its original determination, and the PSR dated September 6, 2005 (the "third amended PSR"), were in the "Physical Condition" section, and merely added details about preexisting physical conditions. Moreover, after reviewing Warman's third amended PSR, Dr. Richard Williams, the RDAP Coordinator for the BOP, determined that Warman remained ineligible for RDAP because, as was the case in his second amended PSR, there is no verification of substance abuse within one year prior to Warman's arrest or indictment. <u>See</u> Dkt. No. 42, Attachment I, Williams Declaration ¶ 15.

Pursuant to 18 U.S.C. §3621(b) and (e), determination of eligibility for substance abuse treatment is within the sole discretion of the BOP and, pursuant to 18 U.S.C. § 3625, this Court lacks the authority to review such decisions unless a cognizable

---

[4] On August 18, 2009, the Court granted the respondent's request that Warman's PSRs be sealed and only used for <u>in</u> <u>camera</u> review (dkt. no. 41).

**WARMAN V. PHILIPS**                                              1:08CV217

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

constitutional claim is presented. Webster v. Doe, 486 U.S. 592 (1988). In this case, Warman has specifically objected to the R&R's recommendation to dismiss his challenge to the BOP's determination based on a constitutional equal protection claim.

### V. Standard of Review

Although courts liberally construe pro se complaints that raise civil rights claims, Gordon v. Leeks, 574 F.2d 1147, 1151 (4th Cir. 1978), even under such a liberal standard, courts have the authority to dismiss actions that are frivolous or malicious, or that fail to state a claim for which relief can be granted. 28 U.S.C. § 1915(e)(2)(B). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Further, once a claim has been adequately stated, it may be supported by showing any set of facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). A claim must be dismissed, however, if it is merely

**WARMAN V. PHILIPS**                                              1:08CV217

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

conceivable and fails to cross "'the line from conceivable to plausible.'" Id. at 1950-51 (quoting Twombly, 550 U.S. at 570).

## VI.  Analysis

The Court reviews de novo any portions of an R&R to which a specific objection is made. 28 U.S.C. § 636(b)(1). It may adopt, without explanation, any of the recommendations to which the prisoner does not object. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Consequently, the Court **ADOPTS** the recommendations in the Magistrate Judge's R&R to which Warman has interposed no objection and also waives the exhaustion requirement in this case. The Court turns now to Warman's motion for a continuance and his objection to the Magistrate Judge's recommendation that he has not adequately supported his equal protection claim, which it reviews de novo.

### A.  Motion for Continuance and Request for Documents

Warman moved the Court to order the government to produce certain documents pursuant to FOIA, including a copy of his amended PSR, and to continue this case for thirty days to allow him to review those documents. As a basis for his motion, Warman asserts that the DOJ's denial of his FOIA request, and Magistrate Judge

8

**WARMAN V. PHILIPS**                                              **1:08CV217**

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

Seibert's endorsement of that decision, violate 28 U.S.C. § 513.61(b) and 5 U.S.C. § 552, and are contrary to the holding in United States v. Pugh, 69 Fed. Appx. 628 (4th Cir. 2003)(unpublished). In Pugh, the Fourth Circuit concluded "that under FOIA, an inmate is entitled to a copy of his or her own PSR from the Department of Justice ('DOJ'), the BOP, or the Parole Commission." Id. at 629.

In his Order dated May 19, 2009, denying Warman's motion for records, Magistrate Judge Seibert noted that the DOJ has developed administrative procedures for FOIA requests, but he did not determine whether Warman had exhausted those administrative remedies. Instead, he denied Warman's motion, finding it inappropriate to bring a FOIA request as a § 2241 petition.

A § 2241 petition is appropriate whenever an inmate challenges the fact or length of his confinement, or an administrative order regarding his good-behavior credits. It is well-established, however, that it may not be used to challenge the inmate's conditions of confinement. Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973); Moran v. Soudalle, 218 F.3d 647, 649 (7th Cir. 2000).

9

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

In <u>Moran</u>, for example, five Wisconsin state inmates filed petitions pursuant to § 2241, claiming they had been unconstitutionally transferred to privately-run prisons in other states. 218 F.3d at 649. Because those claims challenged conditions of confinement, the Seventh Circuit determined that they had not been appropriately filed as § 2241 petitions, but should have been filed as § 1983 complaints. <u>Id.</u> at 651. It further held that it could not convert incorrectly filed § 2241 petitions into §1983 complaints because, under the Prison Litigation Reform Act ("PLRA"), § 2241 petitions and § 1983 complaints have different procedural requirements and potential consequences. <u>Id.</u> at 651. Accordingly, the court dismissed the claims without prejudice. <u>Id.</u> at 652.

Unfortunately, as had the parties in <u>Moran</u>, Warman has improperly raised his FOIA claim as a § 2241 petition. A FOIA request does not challenge the fact or length of confinement. Moreover, Warman cannot simply incorporate additional civil actions under his § 2241 petition because altering his suit in such a way impacts various procedural requirements and has other potential

**WARMAN V. PHILIPS**                                                1:08CV217

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

consequences.[5] Due to those different procedural requirements, and also other possible consequences between a § 2241 petition and a civil action based on violations of FOIA, the Court concludes that Warman cannot maintain his FOIA action as a § 2241 petition.[6] Accordingly, Magistrate Judge Seibert's denial of Warman's FOIA motion was correct, and the Court **DENIES** Warman's motion to continue(dkt. no. 36).

   **B.  Equal Protection Claim**

   The remaining issue to which Warman specifically objects is the recommendation in the R&R to dismiss his equal protection claim for failure to state a claim.  Specifically, the R&R concluded

---

   [5] For example, in <u>Moran</u>, the court recognized that prisoners often strategically file their claims.  <u>Id.</u> 18 F.3d at 649. Because a habeas petition has a five dollar ($5) filing fee, while a § 1983 claim has a one hundred fifty dollar ($150) filing fee, which will be fully collected over time from the prisoner's trust account, some prisoners attempt to commence their cases under § 2241 purely for financial reasons. <u>Id.</u> Further, under 28 U.S.C. § 1915(g), prisoners filing frivolous claims as civil actions are issued "strikes." <u>Id.</u> Upon accumulating three strikes, prisoners filing new civil actions must prepay the entire filing fee, whereas the filing of a § 2241 petition has no such consequence. <u>Id.</u>

   [6] Currently, the fee to file civil action is three hundred fifty dollars ($350).  <u>See</u> 28 U.S.C. §1914(a).  Even if a prisoner attempts to bring an action *in forma pauperis*, he is still required to pay the full filing fee.  28 U.S.C. §1915(b)(1).

WARMAN V. PHILIPS                                              1:08CV217

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

that, because Warman had failed to assert that any similarly situated person had been treated differently, or that the alleged unequal treatment was the result of intentional or purposeful discrimination, he had failed to make the requisite showing to support a claim that his rights under the equal protection clause had been violated.

The R&R correctly identified the controlling law for establishing an equal protection claim. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Moreover, as the R&R also correctly pointed out, Warman failed to plead any facts in his complaint, or in his response to the defendant's motion to dismiss, supporting such an equal protection claim.

In his objections, however, to support his equal protection claim, Warman referenced the circumstances of an inmate named Sam Waskal ("Waskal"), claiming that Waskal is a "similarly situated" person. Warman even attached a copy of a news article, entitled

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

"Time Off For Bad Behavior" by Kai Falkenberg, from <u>Forbes Magazine</u>, dated January 12, 2009. Notwithstanding the obvious hearsay problems presented by Warman's reliance on this news article, Sam Waskal clearly is not a similarly situated person whose treatment by the BOP supports Warman's equal protection claim.

First, Warman alleges that his third amended PSR contains "a prolonged and rich history of substance abuse along with a recommendation that medical intervention was required, along with a BOP professional assessment from his first institution of commitment that [he] was appropriate [sic] and needed drug treatment. . . ." Dkt. No. 36, p. 3. As evidenced by the government's supplemental response, however, these allegations are inaccurate. Although Warman's third amended PSR states in the "Offense Conduct" section that witnesses at his trial testified they had used cocaine with him, the PSR does not establish that Warman had a substance abuse problem within one year of his arrest or indictment.

Importantly, the "Substance Abuse" section of Warman's most recent PSR states that "[h]e indicated that he does not feel that

**WARMAN V. PHILIPS**                                              **1:08CV217**

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

he is addicted to any drug nor does he consider himself as [sic] an alcoholic;" the PSR also includes no recommendation for medical intervention in his case. Moreover, during his psychological screening at FCI Milan, where Warman was first designated after sentencing, Warman reported a "history" of substance abuse, but he told them that he was not interested in drug abuse treatment. See Dkt. No. 42-4. Further, the report of the screening does not establish that his historical substance abuse occurred within the year prior to his arrest or indictment. Id.

Based on the information in the third amended PSR, it is clear that Warman's case does not resemble that of Waskal. First, although the article from Forbes states that Waskal told his probation officer during his presentence interview that he did not have an alcohol problem, it never mentions what information was ultimately included in Waskal's presentence report. Hence, there is no evidence establishing that the information in Waskal's presentence report resembles that in Warman's most recent PSR.

Second, the article in Forbes states that, about a month after Waskal's plea hearing, Waskal's attorneys "told the feds he had recently developed a 'dependence on alcohol' and would benefit from

14

**WARMAN V. PHILIPS**                                      **1:08CV217**

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE,
OVERRULING PETITIONER'S OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING
PETITIONER'S PENDING MOTIONS AS MOOT**

treatment for his newly acquired addiction." In contrast, at the intake screening at his first two institutions, FCI Milan and FCI Ashland, Warman stated that he was not interested in drug abuse treatment. See Dkt. Nos. 42-4 and 42-5. Moreover, although he alleges that his third amended PSR, as contrasted to the PSR used by the BOP, documents a substance abuse problem, the declaration of Richard Williams (dkt. no. 42-1), and a comparison of Warman's second and third amended PSRs, clearly establish that there was no indication of substance abuse within one year of his arrest or indictment in either PSR, and that the only difference between the two is the addition of four paragraphs to the "Physical Condition" section of the third amended PSR detailing his preexisting physical medical conditions, including sleep apnea and high blood pressure.

Based on the facts presented, Warman has failed to identify any similarly situated person to support his equal protection claim, and has failed to present any evidence that his alleged unequal treatment was the result of intentional or purposeful discrimination. Warman's constitutional equal protection claim, therefore, fails. See Morrison, 239 F.3d at 654. Accordingly, as Magistrate Judge Seibert concluded in his R&R, because Warman has

**WARMAN V. PHILIPS**                                              1:08CV217

**ORDER DENYING PETITIONER'S MOTION TO CONTINUE, OVERRULING
PETITIONER'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND
DENYING PETITIONER'S PENDING MOTIONS AS MOOT**

not presented a cognizable constitutional claim, the Court has no authority to review the BOP's determination of Warman's eligibility for RDAP.  See 18 U.S.C. §§ 3621(b), 3621(e), and 3625.

### VII.  Conclusion

For the reasons stated, the Court **OVERRULES** Warman's objection to the R&R, **ADOPTS** the R&R (dkt no. 29), **GRANTS** Philips' motion to dismiss (dkt. nos. 18), **DENIES AS MOOT** Warman's pending motions (dkt. nos. 4, 16, and 17), **DISMISSES WITH PREJUDICE** Warman's petition, and **DIRECTS** the Clerk to strike this case from the docket.

It is so **ORDERED.**

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of this Order to counsel of record and to mail a copy of this Order to the pro se petitioner, via certified mail, return receipt requested.

Dated: August 25, 2009.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE